MARTIN J. BRILL (State Bar No. 53220)
TODD M. ARNOLD (State Bar No. 221868)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: mjb@lnbyb.com, tma@lnbyb.com

Proposed Attorneys for Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>TOWNSEND CORPORATION<br>d/b/a Land Rover Jaguar Anaheim Hills,<br><br>        Debtor and Debtor in Possession.<br><br>In re:<br><br>LRJC, INC.<br>d/b/a Land Rover Jaguar Cerritos,<br><br>        Debtor and Debtor in Possession. | Case No.: 8:11-bk-22690-RK<br><br>Case No.: 8:11-bk-22695-RK<br><br>Chapter 11 Cases<br><br>**DEBTORS' NOTICE OF EMERGENCY MOTION AND EMERGENCY MOTION FOR AN ORDER AUTHORIZING THE USE OF CASH COLLATERAL ON AN INTERIM BASIS PENDING A FINAL HEARING; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Omnibus Statement of Facts and Omnibus Declarations in Support of Motion Filed Concurrently Herewith]<br><br>**Hearing:**<br>  Date:    September 12, 2011<br>  Time:   11:00 a.m.<br>  Place:  Courtroom "5D"<br>             411 West Fourth Street<br>             Santa Ana, CA 92701-4593 |

## SUMMARY AND NOTICE

**PLEASE TAKE NOTICE THAT,** pursuant to 11 U.S.C. §§ 105 and 363, Fed. R. Bankr. P. 4001, and L.B.R. 2081-1, 4001-2, 9013-1, and 9075-1, Townsend Corporation d/b/a Land Rover Jaguar Anaheim Hills ("LRJ Anaheim") and LRJC, Inc. d/b/a Land Rover Jaguar Cerritos ("LRJ Cerritos"), the debtors and debtors in possession in the above captioned cases for which joint administration is being sought (collectively, the "Debtors"), hereby move, on an emergency basis, for an interim order authorizing the Debtors to use cash collateral pending a final hearing (the "Motion").

As discussed in the concurrently Omnibus Statement of Facts in Support of First Day Motions (the "Omnibus Facts")[1] and the declarations of Ernest W. Townsend IV and Todd M. Arnold (the "Omnibus Declarations") annexed thereto, on September 9, 2011 (the "Petition Date"), the Debtors commenced their bankruptcy cases by each filing a voluntary petition for relief under Chapter 11 of title 11, United States Code § 101, et seq. (the "Bankruptcy Code").[2] No trustees have been appointed, and the Debtors are continuing to manage their financial affairs as debtors in possession pursuant to Sections 1107 and 1108.

Each of the Debtors operates an auto dealership. The Debtors require the immediate use of Cash Collateral so that they can maintain operations and going concern value while they attempt to effectuate a sale of substantially all of their assets and/or a reorganization.

The Debtors hope to be able to negotiate a cash collateral stipulation (the "Cash Collateral Stipulation") and a postpetition financing arrangement with BMW FS, the Debtors' primary secured creditor, that will enable the Debtors sufficient time to (1) consummate a sale of substantially all of the Debtors' assets, (2) obtain a new flooring lender, and/or (3) confirm a plan or plans of reorganization. In the meantime, the Debtors are seeking authority to use Cash Collateral on an interim basis pending a final hearing, as it is imperative that the Debtors immediately be allowed to use Cash Collateral.

---

[1] Unless otherwise stated, all capitalized terms herein have the same meanings as in the Omnibus Facts.
[2] Unless otherwise stated, all section references herein are to the Bankruptcy Code.

The only source of revenue available to the Debtors to use to operate their businesses is the revenue generated from the sale of vehicles, services, and equipment. As a result, the Debtors have no ability to continue to operate their businesses and maintain the going concern value thereof unless the Debtors have immediate access to, and use of, their Cash Collateral to pay the Debtors' ordinary operating expenses, including, but not limited to, payroll, rent, utilities, etc. The expenses the Debtors must be able to pay are set forth in the budgets (the "Budgets") for each of the Debtors collectively attached to the Omnibus Facts as Exhibit "6." The Debtors' inability to pay those expenses would cause immediate and irreparable harm to the Debtors and their businesses. The inability of the Debtors to use their Cash Collateral would likely result in the immediate closure of the Debtors' dealerships, which would lead to a precipitous decline in the Debtors' going concern value and gravely jeopardize any sale or reorganization of the Debtors' businesses, which would harm all creditors of the Debtors, including causing substantial losses for BMW FS.

Accordingly, the Debtors respectfully request that the Court enter an order authorizing the Debtors to use Cash Collateral pursuant to the Budgets on an interim basis pending a final hearing, except that the Debtors seek Court authority to exceed the total budgeted sums (both individually and in the aggregate) by no more than 15% to enable the Debtors to avoid having to rush back into Court if the Debtors' actual expenses exceed the Debtors' budgeted expenses by a small amount. Moreover, if actual expenditures for any line items during a particular period are less than in the Budgets, the difference shall carryover to the following months. Notwithstanding the foregoing, each Debtor, its particular Cash Collateral, its particular Budget, and the accounting under its particular Budget will be treated separately. That is, there will be separate accounting and no commingling between the Debtors. A proposed form of order regarding Cash Collateral Use is attached to the Omnibus Facts as Exhibit "7."

**PLEASE TAKE FURTHER NOTICE THAT** Pursuant to Local Bankruptcy Rule 4001-2, the Debtors make the following statements regarding the relief requested by the Debtors pertaining to the Debtors' use of Cash Collateral and the proposed order thereon attached to the Omnibus Facts as Exhibit "7."

| **Provision** | **Paragraph** |
|---|---|
| Cross-collateralization clauses | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured party's lien or debt. | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's lien and liens held by persons who are not party to the stipulation, or which create a lien senior or equal to any existing lien. | No |
| Waivers of 11 U.S.C. § 506(c), unless the waiver is effective only during the period in which the debtor is authorized to use cash collateral or borrow funds. | No |
| Provisions that operate, as a practical matter, to divest the debtor in possession of any discretion in the formulation of a plan or administration of the estate or to limit access to the court to seek any relief under other applicable provision of law. | No |
| Releases of liability for the creditor's alleged prepetition torts or breaches of Contract. | No |
| Waivers of avoidance actions arising under the Bankruptcy Code. | No |
| Automatic relief from the automatic stay upon default, conversion to chapter 7, or appointment of a trustee. | No |
| Waivers of procedural requirements, including those for foreclosure mandated under applicable non-bankruptcy law, and for perfection of replacement liens. | No – except for standard replacement lien language in the proposed order. |
| Adequate protection provisions which create liens on claims for relief arising under 11 U.S.C. §§ 506(c), 544, 545, 547, 548 and 549. | No |
| Waivers, effective on default or expiration, of the debtor's right to move for a court order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing the use of cash collateral in the absence of the secured party's consent. | No |
| Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the applicable cash collateral order. | No |
| Provisions providing for the paying down of prepetition principal owed to a creditor. | No |

| **Provision** | **Paragraph** |
|---|---|
| Findings of fact on matters extraneous to the approval process. | No |

**PLEASE TAKE FURTHER NOTICE THAT,** in order to provide maximum notice of this Motion, concurrently with the filing of this Notice and Motion with the Court, the Debtors served by overnight mail a copy of this Notice and Motion and all supporting papers upon the Office of the United States Trustee, creditors with claims allegedly secured by the assets of the Debtors, the Debtors' 20 largest unsecured creditors, and all of those parties who have requested special notice.

**PLEASE TAKE FURTHER NOTICE THAT,** the relief sought in this Motion is based upon this Notice of Motion and Motion, the Omnibus Facts, the Omnibus Declarations and the exhibits thereto, the statements, arguments and representations of counsel to be made at the hearing on the Motion, and any other evidence properly presented to the Court at or prior to the hearing on the Motion.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order:

1. affirming the adequacy of the notice given;

2. granting the Motion on an interim basis pending a final hearing thereon;

3. authorizing the Debtors to use Cash Collateral and to pay the expenses set forth in the Budgets on an interim basis pending a final hearing;

4. setting a final hearing on the Motion; and

///

///

///

5. granting such other and further relief as the Court deems just and proper.

Dated: September 9, 2011    TOWNSEND CORPORATION
                d/b/a Land Rover Jaguar Anaheim Hills

                - and -

                LRJC, INC.
                d/b/a Land Rover Jaguar Cerritos

                By: /s/ Todd M. Arnold
                  MARTIN J. BRILL
                  TODD M. ARNOLD
                  LEVENE, NEALE, BENDER, YOO
                    & BRILL L.L.P.
                 Proposed Attorneys for Debtors and
                 Debtors in Possession

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### STATEMENT OF FACTS

SEE OMNIBUS STATEMENT OF FACTS IN SUPPORT OF FIRST DAY MOTIONS (THE "OMNIBUS FACTS") AND THE DECLARATIONS OF ERNEST W. TOWNSEND IV AND TODD M. ARNOLD (THE "OMNIBUS DECLARATIONS") ANNEXED THERETO FILED CONCURRENTLY HEREWITH.

CAPITALIZED TERMS NOT OTHERWISE DEFINED HEREIN SHALL HAVE THE SAME MEANINGS AS IN THE OMNIBUS FACTS.

### II.

### DISCUSSION

**A.  The Debtors Should be Authorized to Use Cash Collateral to Operate, Maintain and Preserve Their Businesses.**

The Debtors' use of property of the estates is governed by Section 363 of the Bankruptcy Code, which provides, in relevant part, as follows:

> If the business of the debtor is authorized to be operated under section. . .1108. . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. §363(c)(l).  A debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with Section 363.  See 11 U.S.C. §1107(a).

"Cash collateral" is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and an entity other than the estate have an interest. . . ."  11 U.S.C. §363(a).  Section 363(c)(2) establishes a special requirement with respect

to "cash collateral," providing that the trustee or debtor in possession may use "cash collateral" under subsection (c)(l) if:

> (A)    each entity that has an interest in such cash collateral consents; or
> (B)    the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section.

See 11 U. S.C. §363(c)(2)(A) and (B).

It is well settled that it is appropriate for a Chapter 11 debtor to use cash collateral for the purpose of maintaining and operating its property. 11 U.S.C. § 363(c)(2)(B); In re Oak Glen R-Vee, 8 B.R. 213, 216 (Bankr. C.D. Cal. 1981); In re Tucson Industrial Partners, 129 B.R. 614 (9th Cir. BAP 1991). In addition, where the debtor is operating a business, it is extremely important that the access to cash collateral be allowed in order to facilitate the goal of reorganization: "the purpose of Chapter 11 is to rehabilitate debtors and generally access to cash collateral is necessary to operate a business." In re Dynaco Corporation, 162 B.R. 389 (Bankr. D. N.H. 1993), quoting In re Stein, 19 B.R. 458, 459. (Bankr. E.D. Pa. 1982).

As discussed in the Omnibus Facts, the Debtors hope to be able to negotiate a Cash Collateral Stipulation and a postpetition financing arrangement with BMW FS that will enable the Debtors sufficient time to (1) consummate a sale of substantially all of the Debtors' assets, (2) obtain a new flooring lender, and/or (3) confirm a plan or plans of reorganization. In the meantime, the Debtors are seeking authority to use Cash Collateral on an interim basis pending a final hearing, as it is imperative that the Debtors immediately be allowed to use Cash Collateral.

The only source of revenue available to the Debtors to use to operate their businesses is the revenue generated from the sale of vehicles, services, and equipment. As a result, the Debtors have no ability to continue to operate their businesses and maintain the going concern value thereof unless the Debtors have immediate access to, and use of, their Cash Collateral to pay the Debtors' ordinary operating expenses, including, but not limited to, payroll, rent, utilities, etc. The expenses the Debtors must be able to pay are set forth in the budgets (the "Budgets") for each of the Debtors collectively attached to the Omnibus Facts as Exhibit "6." The Debtors' inability to pay those

expenses would cause immediate and irreparable harm to the Debtors and their businesses. The inability of the Debtors to use their Cash Collateral would likely result in the immediate closure of the Debtors' dealerships, which would lead to a precipitous decline in the Debtors' going concern value and gravely jeopardize any sale or reorganization of the Debtors' businesses, which would harm all creditors of the Debtors, including causing substantial losses for BMW FS.

Accordingly, the Debtors respectfully request that the Court enter an order authorizing the Debtors to use Cash Collateral pursuant to the Budgets on an interim basis pending a final hearing, except that the Debtors seek Court authority to exceed the total budgeted sums (both individually and in the aggregate) by no more than 15% to enable the Debtors to avoid having to rush back into Court if the Debtors' actual expenses exceed the Debtors' budgeted expenses by a small amount. Moreover, if actual expenditures for any line items during a particular period are less than in the Budgets, the difference shall carryover to the following months. Notwithstanding the foregoing, each Debtor, its particular Cash Collateral, its particular Budget, and the accounting under its particular Budget will be treated separately. That is, there will be separate accounting and no commingling between the Debtors. A proposed form of order regarding Cash Collateral Use is attached to the Omnibus Facts as Exhibit "7."

**B.** **All of the Debtors' Secured Creditors With Claims Allegedly Secured by the Debtors' Assets Will be Adequately Protected by the Debtors' Use of Cash Collateral.**

To the extent that an entity has a valid security interest in the revenues generated by collateral, those revenues constitute "cash collateral" under Section 363(a) of the Bankruptcy Code. Pursuant to Section 363(c)(2), the Court may authorize the debtor to use a secured creditor's cash collateral if the secured creditor is adequately protected. In re Mellor, 734 F.2d 1396, 1400 (9th Cir. 1984). See also In re O'Connor, 808 F.2d 1393, 1398 (10th Cir. 1987); In re McCombs Properties VI, Ltd., 88 B.R. 261, 265 (Bankr. C.D. Cal. l988).

Pursuant to the Supreme Court case of United Savings Association v. Timbers of Inwood Forest Associates, 108 S.Ct. 626, 629 (1988) and subsequent case law, the property interest that a debtor must adequately protect pursuant to Sections 361(1) and (2) of the Bankruptcy Code is only

the value of the lien that secures the creditor's claim. 108 S.Ct. at 630. See also McCombs, at 266. Section 506(a) "limit[s] the secured status of a creditor (i.e., the secured creditor's claim) to the lesser of the [allowed amount of the] claim or the value of the collateral." McCombs, at 266.

The Ninth Circuit made clear in Mellor, at 1401, that in the case of an oversecured creditor, an equity cushion of 20% is considered adequate protection of a secured creditor's interest in cash collateral as a matter of law. See also In re McGowan, 6 B.R. 241, 243 (Bankr. E.D. Pa.1980) [holding a 10% cushion is sufficient to be adequate protection]; In re Rogers Development Corp., 2 B.R. 679, 685 (Bankr. E.D. Va.1980) [court decided that an equity cushion of approximately 15% to 20% was sufficient adequate protection to the creditor, even though the debtors had no equity in the property.]

Here, the Debtors believe that BMW FS has an equity cushion in excess of 20%. As discussed in the Omnibus Facts, as of the Petition Date, the amount the Debtors owed to BMW FS on the BMW FS Claim was approximately $12,004,406, with $7,170,011 owed by LRJ Anaheim and $4,834,395 owed by LRJ Anaheim. As also discussed above, the BMW FS Claim is allegedly cross-guarantied and secured by a first priority lien on substantially all of the Debtors' Assets, including the Debtors' Cash Collateral.

Collectively attached to the Omnibus Facts as Exhibit "1" and "2" are summaries of UCC-1 Financing Statements and the actual UCC-1 Financing Statements (collectively, the "LRJ Anaheim Financing Statements") affecting LRJ Anaheim that were obtained by conducting searches under the name "Townsend Corporation" (Exhibit "1") and "Land Rover Jaguar Anaheim Hills" (Exhibit "2"). Collectively attached to the Omnibus Facts as Exhibit "3" and "4" are summaries of UCC-1 Financing Statements and the actual UCC-1 Financing Statements (collectively, the "LRJ Cerritos Financing Statements" and, together with the LRJ Anaheim Financing Statements, the "Financing Statements") affecting LRJ Cerritos that were obtained by conducting searches under the name "LRJC, Inc." (Exhibit "3") and "Land Rover Jaguar Cerritos" (Exhibit "4").

Based on a review of the Financing Statements, the Debtors believe that BMW FS is the only entity that has an interest in the Debtors' Cash Collateral. The other entities that filed Financing

Statements (ADP Commercial Leasing, LLC, Ford Motor Company, the Employment Development Department, the IRS, Sterling Savings Bank, Bank of the West (Trinity Division), Anthony Rector, and Wayne's (a Division of Tool Works, Inc.), either (1) only have interests in particular pieces of equipment or alleged tax liens that do not attach to Cash Collateral, and/or (2) were erroneously included in the Financing Statements obtained by the search because the liens are against entities other than the Debtors.

Collectively attached to the Omnibus Facts as Exhibit "5" are the Debtors' balance sheets dated as of August 31, 2011 (the "Balance Sheets"). As can be seen from the Balance Sheets, as of August 31, 2011, (1) the value of LRJ Anaheim's Assets was approximately $12,875,723 (including, among other things, approximately $2,554,248 in accounts receivable, $4,379,011 in new and used vehicle and parts and other inventory, and $3,164,096 in buildings and improvements, furniture fixtures and equipment, and service vehicles), (2) the value of LRJ Cerritos' Assets was approximately $14,655,559 (including, among other things, approximately $1,311,666 in accounts receivable, $3,636,286 in new and used vehicle and parts and other inventory, and $717,768 in buildings and improvements, furniture fixtures and equipment, and service vehicles). Thus, the total value of the Debtors' Assets was approximately $27,531,282.

Based on the foregoing, on a global basis, BMW FS has an equity cushion of 129% (Assets ($27,531,282) - BMW FS Claim ($12,004,406) = Value of Assets Above BMW FS Claim ($15,526,876) / BMW FS Claim ($12,004,406) = 129%). Even if the only Assets considered are the Debtors' accounts receivable, inventory, buildings and improvements, furniture, fixtures and equipment, and service vehicles (the "Limited Assets"), BMW still has an equity cushion of 31% (Limited Assets ($15,763,075) - BMW FS Claim ($12,004,406) = Value of Assets Above BMW FS Claim ($3,758,669) / BMW FS Claim ($12,004,406) = 31%).

Likewise, if the BMW FS Claim and the Debtors Limited Assets are allocated between the Debtors as set forth above, BMW FS is still adequately protected by a large equity cushion, as follows:

11

| **LRJ Anaheim** | **LRJ Cerritos** |
|---|---|
| **Accounts Receivable, Inventory, Buildings and Improvements, Furniture, Fixtures and Equipment, and Service Vehicle Assets Only** | **Accounts Receivable, Inventory, Buildings and Improvements, Furniture, Fixtures and Equipment, and Service Vehicle Assets Only** |
| $2,554,248 | $1,311,666 |
| $4,379,011 | $3,636,286 |
| $3,164,096 | $717,768 |
| $10,097,355 | $5,665,720 |
| **BMW FS Debt** | **BMW FS Debt** |
| $7,170,011 | $4,834,395 |
| **Equity Cushion** | **Equity Cushion** |
| 41% | 17% |

However, in addition, the law is also clear that the preservation of the value of a secured creditor's lien is sufficient to provide adequate protection to a secured creditor when a debtor seeks to use cash collateral. In re Triplett, 87 B.R. 25 (Bankr. W.D.Tex. 1988); see also In re Stein, 19 B.R. 458 (Bankr. E.D. Pa. 1982). In Stein, the Court found that, as a general rule, a debtor may use cash collateral where such use would enhance or preserve the value of the collateral, and allowed the debtor therein to use cash collateral even though the secured party had no equity cushion for protection. The Stein Court determined that the use of cash collateral was necessary to the continued operations of the debtor, and that the creditor's secured position could only be enhanced by the continued operation of the debtor's business. See also In re McCombs, supra, where the court determined that the debtor's use of cash collateral for needed repairs, renovations and operating expenses eliminated the risk of diminution in the creditor's interest in the cash collateral and such use would more likely increase cash collateral.

Additionally, in determining adequate protection, Courts have stressed the importance of promoting a debtor's reorganization. In In re O'Connor, the Tenth Circuit stated:

> In this case, Debtors, in the midst of a Chapter 11 proceeding, have proposed to deal with cash collateral for the purpose of enhancing

> the prospects of reorganization. This quest is the ultimate goal of Chapter 11. Hence, the Debtors' efforts are not only to be encouraged, but also their efforts during the administration of the proceeding are to be measured in light of that quest. Because the ultimate benefit to be achieved by a successful reorganization inures to all the creditors of the estate, a fair opportunity must be given to the Debtors to achieve that end. Thus, while interests of the secured creditor whose property rights are of concern to the court, the interests of all other creditors also have bearing upon the question of whether use of cash collateral shall be permitted during the early stages of administration.

In re O'Connor, 808 F.2d at 1937.

There is no question here that BMW FS is adequately protected by an equity cushion in excess of 20% and that BMW FS will be further adequately protected by the Debtors' continued operation and the maintenance of its going concern value.

Moreover, BMW FS will be adequately protected because the Debtors are going to continue to make ordinary course payments on the BMW FS Claim –i.e., as vehicles are sold, the Debtors will payoff BMW FS's liens on such vehicles arising from the flooring loans and the Debtors will continue to make ordinary course interest and principal payments on the other obligations owing to BMW FS.

In addition to the foregoing means of adequate protection, as additional adequate protection, the Debtors propose to provide the BMW FS and any other creditor who asserts an interest in the Debtors' Cash Collateral with a replacement lien against the Debtors' Assets, with such replacement lien to have the same extent, validity, and priority as the pre-petition lien held by such creditor.

**C.   The Procedural Requirements Regarding Approval Of The Motion Have Been Satisfied.**

Pursuant to Bankruptcy Rule 4001(b)(1)(C), the Debtors are required to serve a copy of the Motion on any entity with an interest in the Debtors' Cash Collateral, any committee appointed or on the twenty largest unsecured creditors if not committee has been appointed, and any other entity that the Court directs. The Debtors have complied with the foregoing by serving a copy of the Motion by overnight mail to all of the foregoing parties, plus the United States Trustee and those

parties who have requested special notice.

## III.

## **CONCLUSION**

**WHEREFORE**, the Debtors respectfully request that the Court enter an order:

1. granting the Motion on an interim basis pending a final hearing thereon;

2. authorizing the Debtors to use Cash Collateral and to pay the expenses set forth in the Budgets on an interim basis pending a final hearing;

3. setting a final hearing on the Motion; and

4. granting such other and further relief as the Court deems just and proper.

Dated: September 9, 2011                    TOWNSEND CORPORATION
                                                           d/b/a Land Rover Jaguar Anaheim Hills

                                                           - and -

                                                           LRJC, INC.
                                                           d/b/a Land Rover Jaguar Cerritos

                                                           By:   /s/ Todd M. Arnold
                                                                   MARTIN J. BRILL
                                                                   TODD M. ARNOLD
                                                                   LEVENE, NEALE, BENDER, YOO
                                                                     & BRILL L.L.P.
                                                                   Proposed Attorneys for Debtors and
                                                                   Debtors in Possession

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document described as ***DEBTORS' NOTICE OF EMERGENCY MOTION AND EMERGENCY MOTION FOR AN ORDER AUTHORIZING THE USE OF CASH COLLATERAL ON AN INTERIM BASIS PENDING A FINAL HEARING; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ***September 9, 2011***, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Todd M Arnold     tma@lnbrb.com
- Martin J Brill     mjb@lnbrb.com
- United States Trustee (SA)     ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On ***September 9, 2011,*** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page **(Service by Overnight Mail)**

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ***September 9, 2011,*** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

<u>Via Personal Attorney Service</u>
The Hon. Robert N. Kwan
United States Bankruptcy Court
411 West Fourth Street, Room 5165
Santa Ana, CA 92701

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 9, 2011 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*      **F 9013-3.1.PROOF.SERVICE**

LRJAH
LRJC
File No. 5121
RSN Consolidated

<u>Debtor</u>
Townsend Corporation
5425 E. La Palma Avenue
Anaheim, CA 92807-0000

<u>Debtor</u>
LRJC, Inc.
10861 183rd Street
Cerritos, CA 90703-0000

U.S. Trustee - Santa Ana
411 West Fourth Street, Suite 9041
Santa Ana, CA 92701-8000

LRJAH
LRJC
File No. 5121
Secured Creditors (Consolidated

LRJAH

ADP Commercial Leasing
15 WATERVIEW BOULEVARD-MS #934
PARSIPPANY, NJ 07054

ADP Dealer Services
PO BOX 88921
Chicago, IL 60695

BMW Financial Services NA LLC
Jeff Burnside
5550 Britton Parkway
Hilliard, OH 43026

BMW Financial Services NA, LLC
300 Chestnut Ridge Road
Woodcliff Lake, NJ 07677

BMW Financial Services NA, LLC
Attn: Manager, Ret. Comm. Fin.
5515 Parkcenter Circle
Dublin, OH 43017

Employment Development Dept.
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

Ford Motor Company
1555 Fairlane Dr., Suite 200
Allen Park, MI 48101

IRS/OHIO
PO Box 145595
Cincinnati, OH 45250-5595

Sterling Savings Bank
5005 SW Meadows Road, Suite 400
Lake Oswego, OR 97035

Wynn's, A Div. of Illinois Tool Works, Inc.
1050 W. Fifth St.
Azusa, CA 91702

LRJC

ADP Commercial Leasing
15 WATERVIEW BOULEVARD-MS #934
PARSIPPANY, NJ 07054

ADP Dealer Services
PO BOX 88921
Chicago, IL 60695

Anthony Rector
13337 South Street # 569
Cerritos, CA 90703

Bank of the West
Trinity Division
475 Sansome Street, 19th Floor
San Francisco, CA 94111

BMW Financial Services
Flooring Interest
5550 Britton Parkway
Hilliard, OH 43026

BMW Financial Services
Loan Interest
5550 Britton Parkway
Hilliard, OH 43026

BMW Financial Services NA, LLC
Attn: Manager, Ret. Comm. Fin.
5515 Parkcenter Circle
Dublin, OH 43017

Wynn's, A Div. of Illinois Tool Works, Inc.
1050 W. Fifth St.
Azusa, CA 91702

LRJAH
LRJC
File No. 5121
20 Largest (Consolidated

LRJAH

Michael Morgan
Land Rover North America
555 MacArthur Blvd.
Mahwah, NJ 07430

Land Rover North America- Parts
PO BOX 674266
Detroit, MI 48267

Enterprise Rent a Car (AH)
22921 SAVI RANCH PKWY
Yorba Linda, CA 92887

LBA/Met Partners
PO BOX 749019
Los Angeles, CA 90074

Unipart North America-Jaguar Parts
PO BOX 651570
Charlotte, NC 28265

American Express
PO BOX 360001
Ft. Lauderdale, FL 33336

Dane Taylor
Sentry Insurance Company
Box 88315
Milwaukee, WI 53288

Blue Shield California
File 55331
Los Angeles, CA 90074

Land Rover North America - Rotunda
555 MacArthur Blvd.
Mahwah, NJ 07430

Sandy Holguin
836 Bridgewood St.
Corona, CA 92881

Thomas McNerney
1314 Anacapa
Irvine, CA 92602

Jerry DeSouza
3288 Stargate Dr.
Corona, CA 92882

Shell
PO BOX 689010
Des Moines, IA 50368

Autotrader.com LLC
P.O. Box 932207
Atlanta, GA 31193

City of Anaheim
201 South Anaheim Blvd.
Anaheim, CA 92805

The Siegmann Family Trust
1780 E MC FADDEN STREET #117
Santa Ana, CA 92705

Jay Allen
28935 Boleada
Mission Viejo, CA 92692

On-Line Administrators Inc.
PO Box 4539
Chatsworth, CA 91311

LRJC

Christopher Williams
110 N. Limo St., Unit C
Sierra Madre, CA 91024

SKS, Inc.
PO BOX 469110
Escondido, CA 92046

LRNA - Parts
PO BOX 674266
Detroit, MI 48267

Unipart North America-Jaguar Parts
PO BOX 651570
Charlotte, NC 28265

Fernando Glickman
2934 Candelwood St.
Lakewood, CA 90812

Sentry Insurance Company
Box 88315
Milwaukee, WI 53288

Enterprise Rent a Car (Cerr)
10901 AUTO SQUARE DRIVE
Cerritos, CA 90703

City of Cerritos
18125 Bloomfield Ave.
Cerritos, CA 90703

Cerritos Center for the Performing Arts
12700 Center Court Drive
Cerritos, CA 92833

Cerritos Auto Square
3349 CAHUENGA BOULVARD WEST
Los Angeles, CA 90068

Southern California Edison
PO Box 300
Rosemead, CA 91772

Autotrader.com LLC
PO Box 932207
Atlanta, GA 31193

Christopher Stark
29 Alegria
Irvine, CA 92620

Robert Giannini
3902 Berenice Pl.
Los Angeles, CA 90031

Aramark Uniform Services
PO Box 101004
Pasadena, CA 91189

Eric Moreno
15765 Lashburn St.
Whittier, CA 90603

On-Line Administrators Inc.
PO Box 4539
Chatsworth, CA 91311

Kenneth Benson
1118 S. Miramar Avenue
Anaheim Hills, CA 92808

BP Lubricants USA Inc.
PO Box 409383
Atlanta, GA 30384

Trinity Financial Services
P.O. BOX 7167
Pasadena, CA 91109

Justin Ellis
5601 E. Orangethorpe, U107
Anaheim Hills, CA 92807

Vartan Asatryan
17155 Barneston St.
Granada Hills, CA 91344